United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARSHALL L. FIELD,<br>    Petitioner,<br>    v.<br>JOSIE GASTELO,<br>    Respondent. | Case No. 17-cv-05687-SI<br><br>**ORDER OF DISMISSAL WITH LEAVE TO AMEND**<br>Re: Dkt. No. 1 |

Marshall Field, an inmate at the California Men's Colony in San Luis Obispo, California, filed this *pro se* action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. His petition is now before the court for review pursuant to 28 U.S.C. § 2243 and Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts.

## BACKGROUND

In 1975, Marshall Field was convicted of one or more crimes following an incident in which Field had, among other things, "placed a gun against his ex-girlfriend's chest and pulled the trigger. But the gun misfired and police captured Field." *In re. Field*, 2010 WL 5125496, \*3 (Cal. Ct. App. 2011). He served time in prison for that conviction.

In 1979, Field shot a different girlfriend in the chest with a rifle or shotgun. She died. *Id.* at \*2. Field entered a guilty plea and was convicted in Santa Clara County Superior Court of second degree murder with use of a firearm. On February 20, 1980, he was sentenced to fifteen years to life plus three years in prison. He did not appeal his conviction. *See* Docket No. 1 at 3.

On March 3, 2015, Field had his fourteenth parole suitability hearing. A representative of the Santa Clara County District Attorney's office "appeared in support of its position that [Field

should] never be paroled." *Id.* at 9. The Board of Parole Hearings (BPH) found him suitable for release on parole. *See id.* On July 1, 2015, the Governor reversed the finding of parole suitability. *See id.* at 9. (This was the second time the Governor reversed a finding of parole suitability; the Governor also had done so in 2012. *See id.*)

Field filed several unsuccessful petitions for writ of habeas corpus in the state courts after the Governor reversed the finding of parole suitability in 2015. *See id.* at 10. He then filed this action.

**DISCUSSION**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A district court considering an application for a writ of habeas corpus shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

In his federal petition for writ of habeas corpus, Field alleges that: (1) the government violated his right to due process by violating the plea agreement; (2) the prosecution is bound by the terms of the plea it entered into, even if the prosecution had no authority to enforce those terms; and (3) Field's sentence violates the Eighth Amendment because it has become a *de* facto sentence of life imprisonment without the possibility of parole. As explained in the following sections, the first claim will be dismissed with leave to amend; the second "claim" will be dismissed because it is not an independent basis for habeas relief; and the third claim will be dismissed without leave to amend.

A.  Breach of Plea Agreement Claim

Field contends that his federal constitutional right to due process has been violated because the government has breached the plea agreement entered in 1980. Docket No. 1 at 11. He admits that he entered a plea agreement that included a 15-to-life plus three-year term, but urges that he

2

"understood" the plea agreement "would result in considerably less time for him-- as long as he worked towards rehabilitation, was law-abiding, and was found to be suitable for release to parole by the Board of Parole Terms." Docket No. 1 at 8. He contends that the district attorney should not be allowed to oppose parole, having entered into the plea agreement that permitted parole. *Id.* at 12. And he appears to contend that the district attorney should not be allowed to mention the 1975 prior conviction.

"Plea agreements are contractual in nature and are measured by contract law standards." *Brown v. Poole*, 337 F.3d 1155, 1159 (9th Cir. 2003) (quoting *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993)). A criminal defendant has a due process right to enforce the terms of a plea agreement. *See Santobello v. New York*, 404 U.S. 257, 261-62 (1971).

Field has not identified any particular term in the plea agreement that was breached. He alleges that he "understood" that things would work a certain way, but does not allege that his understanding was made part of the plea agreement. There is no allegation that his subjective expectations about how parole would be decided were part of the plea agreement. Field also provides no evidence that there was any sort of agreement that the prosecutor would refrain from arguing against Field's suitability for parole at later parole hearings or refrain from mentioning the 1975 conviction. The absence of any allegation of any actual promise made to him or any particular term of the agreement that has been breached makes this case different from *Brown*, where the petitioner was able to point to explicit statements in the plea colloquy that led her to believe she would get out in half the minimum years if she behaved herself in prison. *See Brown*, 337 F.3d at 1160 ("Brown heard and acknowledged the prosecutor's promises, and in the process of waiving her right to trial she accepted them as part of her bargain. 'The intent of the parties becomes clear upon an examination of the language of the plea agreement and the conduct of the parties during the plea colloquy.'")

Field urges that California's separation-of-power doctrine "is implicated here." Docket No. 1 at 13. Not really. Federal habeas relief is not available for any violation of California's separation-of-powers doctrine because it is a matter of state law. Federal habeas relief is unavailable for violations of state law or for alleged error in the interpretation or application of

3

state law. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011); *see, e.g.*, *Moore v. Rowland*, 367 F.3d 1199, 1200 (9th Cir. 2004) (per curiam) (state's violation of its separation-of-powers principles does not give rise to a federal due process violation).

The petition fails to state a claim for a due process violation based on a breach of the plea agreement. Leave to amend will be granted so that Field may attempt to allege a plausible claim for a breach of the plea agreement. In his amended petition, he needs to identify the specific term that he claims has been breached. He should attach a copy of the transcript of the plea colloquy transcript from 1980 or the written plea agreement so that this court may see the term allegedly breached.[1] Field also should identify when that term of the plea agreement was first breached.

B. "Claim" That State is Bound By Prosecutor's Promises

Field contends that, "to the extent that the prosecution has induced petitioner to enter into [a] plea bargain based upon terms it had no power or authority to enforce, the state is nonetheless bound by those terms." Docket No. 1 at 14. This is not a separate ground upon which federal habeas relief may be granted and instead is an argument in support of the first claim for relief. That is, Field argues that, even if a promise made by the prosecutor was beyond the prosecutor's authority, the State is bound by that promise. This may be a reason to enforce a promise made in the plea bargain, but it first is necessary to show that a promise was made by the prosecutor. Field has not alleged such a promise. The "claim" is dismissed. Field may repeat his argument in his

---

[1] In an earlier action, Field filed a copy of the sentencing hearing transcript, but not a copy of the plea colloquy transcript or written plea agreement. Nothing in the sentencing hearing transcript supports his claim that the plea agreement was breached. In fact, Field acknowledged the possibility he would spend his entire life in prison.

THE COURT: Now by the terms of my sentence you could be held in state prison for your entire life; do you understand?

DEFENDANT FIELD: (Nods head up and down)

THE COURT: You are nodding your head.

DEFENDANT FIELD: Yes, Your Honor.

Docket No. 1-1 at 96 in *Field v. Sisto*, E. D. Cal. No. CV-06-2562-RHW JPH.

1 amended petition, but only if he identifies the promise that the prosecutor made that might be
2 beyond his authority.

4 C. <u>Eighth Amendment Claim</u>

5 Field contends that his agreed-upon sentence of life with the possibility of parole "has been converted to a *de facto* sentence of life without the possibility of parole," and therefore violates the Eighth Amendment. Docket No. 1 at 16-17.

Field urges this court to look to recent Supreme Court cases on juvenile offenders because the principles "are no less relevant in petitioner's case than as applied to juvenile offenders [or] any other class." Docket No. 1 at 17; *see id.* at 17-18 (citing *Graham v. Florida*, 560 U.S. 48 (2100), and *Miller v. Alabama*, 567 U.S. 460 (2012)). In *Graham*, 560 U.S. at 82, the Supreme Court held that the "Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide." In *Miller*, 567 U.S. at 465, the Supreme Court held that "mandatory life without parole [sentences] for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" Neither of these holdings applies to Field because he was not a juvenile offender when he committed the murder. He apparently was about 25 or 26 years old when he committed the murder. *See generally* Docket No.1 at 18 (Field was 63 years old in January 2017); *In re. Field*, 2010 WL 5125496, *1 (Cal. Ct. App. 2010) (murder occurred in 1979). Given that the Supreme Court's cases limiting certain sentences for juveniles rests squarely on the premise that "children are constitutionally different from adults for purposes of sentencing," *Miller*, 567 U.S. at 471, it makes no sense to argue that adults are just like juveniles for sentencing purposes. The general Eighth Amendment principles discussed in the *Graham* and *Miller* cases inform the court's analysis, but the juvenile-specific rules announced in those cases do not extend to adult offenders such as Field. Thus, Field's claim is considered under general Eighth Amendment principles.

The Eighth Amendment's "Cruel and Unusual Punishments Clause prohibits the imposition of inherently barbaric punishments under all circumstances." *Graham*, 560 U.S. at 59. "For the most part, however, the [Supreme] Court's precedents consider punishments challenged

not as inherently barbaric but as disproportionate to the crime." *Id.* The Eighth Amendment contains a "narrow" proportionality principle – one that "does not require strict proportionality between crime and sentence," and forbids only "extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 59-60. "[O]utside the context of capital punishment, successful challenges to the proportionality of particular sentences [will be] exceedingly rare." *Solem v. Helm*, 463 U.S. 277, 289-90 (1983); *see also Crosby v. Schwartz*, 678 F.3d 784, 795 (9th Cir. 2012) ("Circumstances satisfying the gross disproportionality principle are rare and extreme, and constitutional violations on that ground are 'only for the extraordinary case'"). Only in that rare case where a comparison of the gravity of the offense and the severity of the sentence leads to an inference of gross disproportionality does the court compare a petitioner's sentence with sentences for other offenders in the jurisdiction, and for the same crime in other jurisdictions, to determine whether it is cruel and unusual punishment. *Graham*, 560 U.S. at 60.

A sentence of life in prison (or 15-years-to-life) for a murder does not lead to an inference of gross disproportionality and therefore does not amount to cruel and unusual punishment forbidden by the Eighth Amendment. *See United States v. LaFleur*, 971 F.2d 200, 211 (9th Cir. 1991) ("Under *Harmelin [v. Michigan*, 501 U.S. 957 (1991)], it is clear that a mandatory life sentence for murder does not constitute cruel and unusual punishment"); *cf. Solem*, 463 U.S. at 290 n.15 (discussing earlier case in which it had found the death penalty to be excessive for felony murder in the circumstances of a particular case; "clearly no sentence of imprisonment would be disproportionate" for the felony murder of an elderly couple). Lengthy sentences for crimes less serious than murder also have been upheld by the Supreme Court and Ninth Circuit. *See e.g., Ewing v. California*, 538 U.S. 11, 29-31 (2003) (upholding sentence of 25-years-to-life for recidivist convicted most recently of grand theft); *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003) (upholding sentence of two consecutive terms of 25-years-to-life for recidivist convicted most recently of two counts of petty theft with a prior conviction); *Harmelin*, 501 U.S. at 996 (upholding sentence of life without possibility of parole for first offense of possession of 672 grams of cocaine); *Nunes v. Ramirez-Palmer*, 485 F.3d 432, 439 (9th Cir. 2007) (upholding sentence of 25-years-to-life for the underlying offense of petty theft with a prior conviction after

finding petitioner's criminal history was longer, more prolific, and more violent than the petitioner's in *Andrade*, who suffered a harsher sentence*)*; *Cacoperdo v. Demosthenes*, 37 F.3d 504, 508 (9th Cir. 1994) (sentence of ineligibility for parole for 40 years not grossly disproportionate when compared with gravity of sexual molestation offenses).

Regardless of whether Field views his continued incarceration as a result of the original sentence, the district attorney's opposition to parole, the BPH's decision-making, or the Governor's reversal of the parole grant, no Eighth Amendment violation has occurred on the facts alleged. Even if Field must spend the rest of his life in prison -- which is a doubtful proposition, given that the Governor did not determine that Field shall never receive parole and given that Field will have another parole hearing in 15 years or less -- Field's continued imprisonment would not run afoul of the Eighth Amendment. Life imprisonment for second degree murder committed by an adult is not so disproportionate to the crime that it could be said to amount to cruel and unusual punishment under the Eighth Amendment of the U.S. Constitution.

The Eighth Amendment claim is dismissed. Leave to amend is not granted as to this claim because it would be futile. It is not the shortage of facts, but the state of the law, that poses an insurmountable barrier to relief for Field on this claim.

Finally, the court notes that the habeas statute of limitations, 28 U.S.C. § 2244(d), might bar consideration of the claims Field is trying to present. Because the Eighth Amendment claim is so plainly meritless, judicial economy is promoted by simply denying it on the merits rather than to address the timeliness issue first before denying it on the merits. The breach-of-plea-agreement claim also may have untimeliness problems, but the court prefers to first determine the contours of the claim before considering the timeliness of such a claim. Although the court points out the potential timeliness problem, Field should not address the timeliness issue unless and until the court requires a response from respondent *and* respondent files a motion to dismiss.

**CONCLUSION**

The petition for writ of habeas corpus is dismissed because it fails to state a claim upon which federal habeas relief may be granted. Leave to amend is granted as to the claim that Field's right to due process was violated when the plea agreement was breached. Field must file an amended petition that complies with the directions in this order no later than **December 8, 2017**, and must include the caption and civil case number used in this order and the words AMENDED PETITION on the first page. Failure to file the amended petition will result in the dismissal of this action.

**IT IS SO ORDERED**.

Dated: November 1, 2017

SUSAN ILLSTON
United States District Judge